STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| Town of Fairfax, | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Docket No. 274-11-08 Vtec |
| | } | |
| Leon Beliveau, | } | |
| Defendant. | } | |
| | } | |
| | | |
| | } | |
| In re Beliveau Notice of Violation | } | Docket No. 193-8-08 Vtec |
| (Appeal of Beliveau) | } | |
| | } | |

Decision and Order

In Docket No. 274-11-08 Vtec, the Town of Fairfax brought an enforcement action against Leon L. Beliveau, alleging that he had changed the use of his property at 1166 Main Street from a single-family residence to a rooming and boarding house, without first obtaining a zoning permit for the rooming and boarding house use. In Docket No. 193-8-08 Vtec, concluded by this Court's Decision and Order on summary judgment issued on July 28, 2009 (July 2009 Decision), Mr. Beliveau had appealed from a decision of the Development Review Board (DRB) upholding a Notice of Violation for the same violation.[1] The Town is represented by John H. Klesch, Esq.; Defendant-Appellant Beliveau (Defendant) has appeared and represents himself.

---

[1] While the July 2009 Decision concluded Docket No. 193-8-08 Vtec, in order to avoid "any issue of piecemeal appeals," the court postponed entering a final judgment order in the notice of violation appeal until a judgment order would be entered in the enforcement case (Docket No. 274-11-08 Vtec). July 2009 Decision, at 6, n.1.

In entry orders issued on April 2, 2009, April 8, 2009, and April 23, 2009, the Court discussed the scope of the violation alleged in these cases. The July 2009 Decision in the notice of violation appeal determined that the violation existed. July 2009 Decision, at 4, 6. The July 2009 Decision further established the periods of occupancy of rooms at the property and the amounts of payments for that occupancy received by Defendant, through May 10, 2009. Id. at 4–6. That decision also established the amounts that had been expended by the Town regarding attorney's fees and costs of the litigation as of June 23, 2009, and granted summary judgment in favor of the Town on the appropriate injunctive remedy: that Defendant immediately cease the use of the property as a boarding and rooming house, until and unless he obtains a zoning permit and any other necessary approvals required by the Zoning Bylaws to conduct such a use on the property. Id. at 6–7.

After the summary judgment decision was issued, a previously scheduled evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, to take evidence on any issues not resolved by the July 2009 Decision, and in particular on the monetary factors that should be considered by the Court in calculating an appropriate penalty for the time period of the violation. The parties were given the opportunity to submit written memoranda and requests for findings. Upon consideration of the evidence and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

Defendant owns a house and property at 1166 Main Street in the growth center zoning district of the Town of Fairfax.[2] The 1166 Main Street house was Defendant's primary residence from February 1999 through all periods at issue in the present litigation. Defendant received $44,106 in payments from boarders from January 1, 2007,

---

[2] Facts and legal conclusions stated in the July 2009 Decision will be restated in this decision only as necessary. Unless otherwise noted, the 2007 Town of Fairfax Zoning Bylaws (Zoning Bylaws) are applicable to these cases.

through July 31, 2009. Of those revenues from the use of the house as a boarding house, Defendant received $17,804 during the 414-day period of the violation: from June 12, 2008 (7 days after the notice of violation) through July 31, 2009. Defendant ceased accepting payments from persons residing in rooms at the house as of August 1, 2009.

The Town has incurred $10,920.75 in attorney's fees in this enforcement matter, including both the appeal of the notice of violation (Docket No. 193-8-08 Vtec) and the enforcement action (Docket No. 274-11-08 Vtec). In addition, the Town has incurred $283.93 in court costs and reimbursable attorney's expenses in connection with the above-captioned litigation, for a total of $11,204.68.

As of August 20, 2009, persons unrelated to Defendant were residing in rooms at the 1166 Main Street house, but Defendant was not receiving any money payments from those persons for their occupancy of rooms at the house.

Defendant presented in evidence his 2008 tax return, including Schedule E for the 1166 Main St. Fairfax property. Based on that tax return, he paid $3775 for cleaning and maintenance, $5996 for repairs, $369 for supplies, $816 for insurance, $2712 in legal and other professional fees, $15,272 in mortgage interest, $4585 in taxes, and $8460 in utilities. He also listed an amount of $3714 as depreciation of the property. No evidence was presented by Defendant or the Town as to the tax rules applicable to an owner-occupied residence.

Defendant now argues, contrary to the summary judgment decision in Docket No. 193-3-08 Vtec, that the rooming and boarding house use of the property should be considered to be a preexisting, nonconforming use of the property, entitled to continue without a permit. Defendant's argument is based on the fact that the 2000 and 2002 Zoning Bylaws, in effect when Defendant changed the use of the property, did not require owner-occupancy of the house as an element of the rooming and boarding house use category. However, owner-occupancy, or the lack of it, does not change the

3

fact that a violation existed. Rather, the violation is Defendant's supplying and charging for rooms (sleeping accommodations) without obtaining a permit for running a "rooming and boarding house."

In a zoning enforcement case, the Court assesses a daily penalty for the period during which the defendant has the benefit of the zoning violation. See 24 V.S.A. § 4451(a) (authorizing the imposition of up to $100 per violation of a zoning bylaw, and establishing that each day that such a violation continues is a separate offense); Town of Sherburne v. Carpenter, 155 Vt. 126, 133 (1990) ("As long as defendant has the benefit of the zoning ordinance violation, the statute requires that he pay a daily fine.").

The Court calculates a penalty "to remove the economic benefit and any avoided costs achieved by the defendant from the violation, as well as to compensate the enforcement entity generally for the legitimate costs of bringing the enforcement action." Town of Calais v. Noordsij, No. 142-6-06 Vtec, slip op. at 7 (Vt. Envtl. Ct. Aug. 29, 2008) (Wright, J.) (citing City of St. Albans v. Hayford, 2008 VT 36, ¶¶ 15–18, 183 Vt. 596). The Court may also consider the factors enumerated in the state environmental enforcement statute. See 10 V.S.A. §§ 8010(b), (c)(2); In re Jewell, 169 Vt. 604, 606–07 (1999) (stating that the "court has discretion . . . not only to balance [a defendant's] continuing violation against its compliance costs but also to consider such factors as those specified in [10 V.S.A. §§ 8010(b) and (c)(2)]"). These factors include deterrence, whether a defendant had reason to know that the violation existed, and the duration of the violation. 10 V.S.A. §§ 8010(b)(3), (6), & (8).

In the present case, Defendant had the benefit of the zoning violation for two-and-a-half years, of which 414 days occurred after the seven-day period offered in the notice of violation to cure the violation. All that Defendant had to do to cure the violation was to apply for a zoning permit for the rooming and boarding use of the property. In the alternative, as discussed in the summary judgment decision, he could

4

have reverted to a single-family use of the property. See July 2009 Decision, at 3.[3] If a zoning permit for the rooming and boarding use of the property also required conditional use approval or site plan approval, § 2.3 of the Zoning Bylaws requires the Zoning Administrator to refer the application to the Development Review Board for that purpose. Of course, any decision by the DRB on such an application could be appealed to this Court. See 24 V.S.A. § 4471.

The economic benefit Defendant obtained from the violation was the $17,804 he received in payments for the sleeping accommodations he supplied at the 1166 Main Street house during the 414-day period after the notice of violation's seven-day period to cure the violation. Defendant argues that this amount should be reduced by some or all of the expenses shown on Schedule E of his 2008 tax return for the 1166 Main Street property, and that he instead sustained a loss with regard to that property.

It is not appropriate to reduce the economic benefit obtained by Defendant from the violation by any of the amounts shown as expenses on his tax return, as he has not shown that any of those expenses are attributable only to the rental of sleeping accommodations in the house. Rather, he would have had to pay the taxes, mortgage, utilities, repairs, supplies, cleaning, maintenance, and insurance on the house as his residence, regardless of whether he operated it as a boarding or rooming house. Similarly, Defendant has not shown whether or subject to what limitations a deduction for depreciation is applicable to a taxpayer's own residence.

With regard to the legal and other professional fees, Defendant's tax return shows $2712 allocated to the 1166 Main Street house (separately from $1080 allocated to a property in Burlington not at issue in the present cases). Although the law firm

---

[3] As discussed in the April 2, 2009, April 8, 2009, and April 23, 2009 entry orders, the definition of the use category "rooming and boarding house" requires both "supply[ing]" and "charg[ing] for meals or sleeping accommodations or both." Zoning Bylaws, Appendix B (Definitions).

5

invoices billed to Defendant[4] are all entitled "Beliveau v. Town of Fairfax," in fact they show itemized legal services related to various proceedings in Environmental Court, Chittenden District Court, and the Vermont Supreme Court, as well as legal services regarding fire inspections, fire marshals, and tax assessments, involving the City of Burlington as well as the Town of Fairfax. The itemized legal bills do not reflect any expenses related to the Fairfax property other than those Defendant may have incurred in seeking advice regarding the present enforcement action and notice of violation appeal, in both of which he represented himself. Those expenses were only incurred by Defendant due to his contesting the violation at issue in the present enforcement case, and therefore should not be used to reduce the penalty amount for that same violation.

In addition to removing the economic benefit obtained by Defendant due to the violation, the penalty amount should also generally compensate the Town for the costs of bringing the enforcement action. Town of Calais v. Noordsij, No. 142-6-06 Vtec, slip op. at 7. In the present case, an appropriate penalty amount must also be sufficient to deter the knowing violation of the zoning ordinance, as Defendant continued to charge for providing sleeping accommodations for more than a year after the issuance of the notice of violation. The length of time the violation existed was within the control of Defendant, as was the duration of the litigation and the extensive number of motions or requests filed by Defendant. In the present case, an appropriate penalty amount must go beyond simply the removal of economic benefit. The penalty must provide a measure of deterrence, recognizing that this was a knowing violation of long duration, as well as compensating the Town for the expenses of conducting the litigation.

Accordingly, the appropriate penalty in this case is $22,770, representing the removal of the economic benefit achieved by Defendant due to the violation, reimbursement to the Town of its litigation costs over the 414-day period of the

---

[4] Provided as an attachment to the Town's Proposed Post-Hearing Findings and Conclusions of Law filed on September 4, 2009.

violation, and in recognition of the need for deterrence and the duration of the knowing violation in this case. This penalty, allocated over the period of the violation, amounts to a penalty of $55 per day, well within the available statutory penalty of $100 per day. See 24 V.S.A. § 4451(a).

The Town argues for a penalty of the full $100 per day, on the basis that the violation has not ceased. That is, the Town argues that Defendant is still maintaining a violation at the 1166 Main Street house, even if he has stopped receiving payment from boarders, as non-household members continue to reside at the property, and Defendant never applied for a zoning permit to change the use of the property. If persons are occupying rooms in the house, but those persons are not living as a household unit, it is possible that such a use may also be a violation of the Zoning Bylaws. However, even if it is a violation, it is not the violation that was the subject of the notice of violation or the complaint in the above-captioned cases.[5] The violations that were the subject of the above-captioned cases have been concluded by this decision and the July 2009 Decision.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that based on the violation already determined in the July 2009 Decision and Order, in Docket No. 274-11-08 the Court imposes a penalty of $22,770, payable to the municipality under 24 V.S.A. § 4451(a), calculated as $55 per day for 414 days.

Done at Berlin, Vermont, this 13th day of January, 2010.

_____
Merideth Wright
Environmental Judge

---

[5] If the Town were to pursue any other alleged violations after the date on which Defendant ceased to collect rental or other payments from persons occupying rooms in his house, such asserted violations may be the subject of future appeals of notices of violation or future enforcement actions, but they would receive new docket numbers and be treated as new cases when and if they are filed.